## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT E. SNATCHKO, JR.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **2:12-cv-1179** |
| ) | |
| **PETERS TOWNSHIP, OFFICER MARK E.** ) | |
| **MADEY, CAPTAIN MICHAEL YANCHAK,** ) | |
| **CHIEF HARRY FRUECHT**, **STEVE VASKO,** ) | |
| **INC.** *trading and doing business as* ) | |
| VASKO DODGE **WILLIAM VASKO** ) | |
| *and* **JOHN VASKO,** ) | |
| **Defendants.** | |

### MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court are the following: the FIRST MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. No. 11), filed by Defendants Steve Vasko Inc., t/d/b/a Vasko Dodge, William Vasko and John Vasko (the "Vasko Defendants"), with brief in support (Doc. No. 12); and the MOTION TO DISMISS COMPLAINT (Doc. No. 16), filed by Peters Township, Officer Mark E. Madey, Captain Michael Yanchak, and Chief Harry Fruecht (the "Township Defendants"), with brief in support (Doc. No. 17). Plaintiff, Robert E. Snatchko, Jr., filed responses in opposition to both motions (Doc. Nos. 13, 19) with accompanying briefs (Doc. Nos. 14, 20); both the Vasko Defendants and the Township Defendants filed reply briefs (Doc. Nos. 15, 22). Accordingly, the issues have been fully briefed, and the motions are now ripe for disposition.

### Background

As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party. The following background is drawn from the Complaint and the factual allegations therein are accepted for the purpose of this opinion.

The events leading up to the Complaint began on October 24, 2011 when Plaintiff Robert Snatchko Jr. bought a 2012 Dodge truck from Defendant Steve Vasko, Inc., trading and doing business as Vasko Dodge.   Defendants William Vasko and John Vasko are shareholders and officers of the corporation and are responsible for the daily operation of the dealership located in Peters Township, a municipality in Washington County, Pennsylvania.

Shortly after his purchase, Plaintiff noticed that the truck's steering was not functioning properly and contacted Vasko Dodge for repairs.   Plaintiff spoke to John Vasko when he called the dealership but apparently experienced delay in obtaining an appointment.   Plaintiff persisted, however, in his efforts to schedule an appointment for maintenance and claims to have made at least eight or nine other unsuccessful attempts.   Plaintiff attributes Vasko's allegedly poor customer service for his failure to receive the needed service on his vehicle, which was only the beginning of his automotive woes.

On November 14, 2011, Plaintiff locked his keys in the truck and again called William Vasko for assistance.   William Vasko explained to Plaintiff that key retrieval was not a covered service through the Roadside Assistance Program that he purchased along with his new vehicle. This information made Plaintiff upset, as he proceeded to inform William Vasko of his plans to contact KDKA News and ask its Consumer Reports division to issue a story that the dealership had routinely exhibited poor customer service.

Plaintiff also contacted John Vasko that same day to inquire about the possibility of finally receiving the necessary repairs on his truck.   This attempt was again to no avail.   Much like his earlier threat of negative publicity to William Vasko, Plaintiff once more conveyed his intentions to raise awareness to what he perceived to be poor customer service.   On this occasion, Plaintiff planned to hold up a sign across the street from the dealership on U.S. Route 19 that

would read "Don't buy here.  They forget you after the sale."  (Doc. No. 1 at 4).  Plaintiff did make this warning conditional, stating that he would not act on his plans if John Vasko agreed to schedule his vehicle for repairs.

Initially, John Vasko informed Plaintiff that he would not repair the truck.  According to Plaintiff, he later learned that the steering difficulties was related to the truck's front-end alignment and that Vasko Dodge purportedly did not have a machine that could fix the problem, an issue never communicated to Plaintiff.  Nevertheless, Vasko Dodge scheduled Plaintiff for a repair visit on November 15, 2011

The parties' respective versions of what occurred next differ substantially.  Plaintiff's account begins on November 15, 2011 when he drove to the service department for his scheduled visit.  While Plaintiff waited for a Vasko employee to tell him where to leave his truck, he wished to smoke a cigarette so he engaged the emergency parking brake before he stepped out of the truck.  Plaintiff mistakenly did not shift the transmission into park before he left the truck, which left the vehicle in gear.  Plaintiff turned away from the vehicle to extinguish the cigarette but did not see that the truck had begun to move.  Consequently, Plaintiff's vehicle drifted into a wall near the side door of Vasko Dodge at a low speed, causing damage to the vehicle and the dealership building which included the replacement of a glass door and some cosmetic treatment to the façade.

Almost immediately, John Vasko allegedly approached Plaintiff and knocked him to the ground with his head striking the pavement.  John Vasko proceeded to yell expletives at Plaintiff and threatened his life.  Four to five people ultimately removed John Vasko "from his vicious assault upon Plaintiff."  After someone called for emergency services, an ambulance and police were dispatched.

Officer Madey of the Peters Township Police Department soon arrived, finding Plaintiff in an ambulance receiving emergency care.  Madey noted the apparent injuries in his report but allegedly refused to listen to Plaintiff about the assault by John Vasko.  Instead, Madey apparently directed his attention toward John Vasko who informed the officer that the dealership had a taped voice mail recording from days earlier in which Plaintiff stated "that he was going to drive his vehicle through the front show room window because Vasko would not service his vehicle."  (Doc. No. 1 at 5).  Defendants maintain that Plaintiff did indeed intentionally drive his truck into the building, positing the fundamental disagreement between the parties' respective and almost diametrically opposed factual accounts.

Madey proceeded to arrest Plaintiff without inquiring into the alleged assault despite his insistence that the officer instead place John Vasko in custody, an arrest Madey refused.  According to Plaintiff, Madey told him that the Washington County District Attorney's office said Vasko "was not to be touched."  (Doc. No. 1 at 6).  Plaintiff equates these events as an application of "police muscle" against him by Peters Township Police Department in their attempt to threaten and intimidate Plaintiff because they were protecting the Vasko Defendants from his earlier threats to expose their allegedly poor customer relations policies and refusal to honor contractual obligations with regard to his vehicle warranties.

The Peters Township Police initiated criminal proceedings later that day at MJ-027301-CR-0000251-2011.  Plaintiff was charged with (1) Recklessly Endangering Another Person, 18 PA. CONS. STAT. § 2705, a misdemeanor of the second degree; (2) Criminal Mischief – Damage Property, 18 PA. CONS. STAT. § 3304, a misdemeanor of the second degree; and (3) Terroristic Threats With Intent To Terrorize Another, 18 PA. CONS. STAT. § 2706, a felony of the third degree.  Plaintiff spent two hours in custody and was later released after posting bail.  The case

was held for trial and forwarded to the Court of Common Pleas of Washington County Criminal Division at CP-63-CR-0003087-2011 where it is scheduled for a bench trial on January 29, 2013.

In the aftermath of the incident at Vasko Dodge, there were multiple print and television coverages of the events.  Plaintiff purports that the news falsely portrays him as an aggressive and violent individual.  Plaintiff's employer, Pathways of Southwestern Pennsylvania, allegedly learned of his dispute with Vasko Dodge through the news.

On November 16, 2011, Plaintiff was notified by his employer that his fitness to continue working at Pathways was being questioned because he "deliberately [caused his] vehicle to run into the garage" at the dealership due to his dispute with John Vasko.  (Doc. No. 1 at 7). Plaintiff's co-workers also apparently learned of the collision at Vasko Dodge; they call him "Crash."  Plaintiff was later terminated from Pathways on January 26, 2012 "due to the negative publicity involving his 'widely publicized Vasko garage incident.'"  (Doc. No. 1 at 5).

On August 16, 2012, Plaintiff commenced this civil rights lawsuit pursuant to 42 U.S.C. § 1983 by the filing of a seven count Complaint which alleges various federal and state law claims.  When read together, Defendants' motions request that the Court dismiss the Complaint in its entirety.

## Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)  When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.

2010)).  However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss.  556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675).  First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original).  Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, -- F.3d --, 11-3345, 2012 WL 5954632, at *2 (3d Cir. Nov. 29, 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678).  The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met.  *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).  The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits."  *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553).  Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)).  While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## <u>Analysis</u>

The Complaint filed by Plaintiff presents a number of federal civil rights claims and pendent state common law causes of action. The Court will address each count seriatim.

A. <u>Section 1983 Claims Against Madey</u>

At Count One, the Complaint sets forth claims pursuant to 42 U.S.C. § 1983 against Defendant Madey in his official and individual capacity, seeking compensatory damages as redress for purported Constitutional violations. Plaintiff pleads several distinct legal theories to support his claim. As the Court reads the Complaint, which is not particularly a model of clarity, Plaintiff alleges the following: (1) that the harassment and false arrest of Plaintiff by Madey violated his rights guaranteed by the Fourth and Fourteenth Amendment; (2) that Madey's arrest of Plaintiff without probable cause constituted a deprivation of his substantive and procedural due process rights; and (3) that Madey conducted a retaliatory arrest not supported by probable cause because Plaintiff threatened to expose Vasko Dodge's consumer relations policies and their refusal to honor contractual obligations.

In response, Madey disputes those claims in their entirety. Madey first argues that the pendency of the criminal charges in the Court of Common Pleas of Washington County after a preliminary hearing evidences the existence of probable cause, and therefore, a jury would not support a contrary factual finding. Madey also advances the position that Plaintiff failed to identify any cognizable procedural or substantive due process claim and that the latter is otherwise barred by the doctrine of *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality) and

*Graham v. Connor*, 490 U.S. 386 (1989).   Madey further contends that no protected speech occurred to support a claim of retaliation.   Finally, Madey pleads that he is entitled to the protections afforded by qualified immunity, as there was no underlying Constitutional violation for false arrest and the law is not clearly established with regard to the retaliatory arrest claim.

As Plaintiff unfortunately couches his many theories under the umbrella of a single count, the Court is constrained to address each principle in turn.

       1.  <u>False Arrest Claim</u>

Plaintiff's federal claim(s) in this matter are based on 42 U.S.C. § 1983, which provides civil remedies against any person who, under color of state law, deprives another person of rights protected by the United States Constitution.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).  Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right."  *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

A claim for false arrest under § 1983 originates from the Fourth Amendment guarantee against unreasonable seizures.  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("The Fourth Amendment prohibits arrest without probable cause.") (citation omitted).  "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."  *James*, 2012 WL 5954632, at *2 (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).   Probable cause exists where the facts and circumstances within an officer's knowledge "would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey*

*State Police*, 71 F.3d 480, 484 (3d Cir. 1995).  The existence of probable cause precludes a §

1983 suit for false arrest.

   The question of whether probable cause exists in a § 1983 civil damage suit is generally

one left for the jury to decide.  *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir.

2000) (citations and quotation marks omitted).  However, a district court may decide whether

probable cause exists as a matter of law if the evidence, when viewed in the light most favorable

to the plaintiff, reasonably would not support a contrary factual finding.  *Sherwood v. Mulvihill*,

113 F.3d 396, 401 (3d Cir. 1997).  This determination typically arises within the context of a

motion for summary judgment.  *See, e.g.*, *Minatee v. Philadelphia Police Dept.*, 11-3609, 2012

WL 5359527, at *2 (3d Cir. Nov. 1, 2012); *Young v. City of Wildwood*, 323 F. App'x 99, 101 (3d

Cir. 2009); *Henderson v. Bailey*, 1:09-CV-36-SJM, 2011 WL 1230159 (W.D. Pa. Mar. 31,

2011).  Also, a determination by a state district justice of probable cause in a criminal case is not

conclusive on the same issue in a subsequent civil action for false arrest.  *See, e.g.*, *O'Hara v.

Hanley*, CIV.A. 08-1393, 2011 WL 915776, at *3 (W.D. Pa. Mar. 15, 2011) ("[T]his Court is not

bound by a state court determination of probable cause.") (citing *Merkle v. Upper Dublin Sch.

Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)).

   Here, the factual allegations in the Complaint when accepted as true may give rise to a

viable cause of action.  Plaintiff sufficiently pleaded the first element to a valid cause of action

for false arrest, and the only issue that remains is whether he has met his burden in showing that

the facts as alleged support an initial finding that probable cause did not exist at the time of the

arrest.  This issue is best left for the fact finder, and the finding of probable cause at the

magistrate level in Washington County will not be given preclusive effect in this Court at this

time.  Accordingly, insofar as Count One asserts a viable false arrest claim under the Fourth

Amendment, it will survive the motion to dismiss for a later determination of whether probable cause existed at the time of the arrest by either a factfinder at trial or this Court at the summary judgment stage with the benefit of a more complete record of what truly occurred on November 15, 2011 at Vasko Dodge.

>    2.   Due Process Claims

Plaintiff first claims a substantive due process violation at Count One of the Complaint. The Supreme Court of the United States has observed that it "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 271-72.  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citations omitted).

To guard against expanding the concept, "the Supreme Court has established the 'more-specific-provision rule.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843-44, (1998)).  This well-established rule of law referenced by Defendant provides that "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Here, Plaintiff's claim is for an unlawful seizure, which is covered by the specific Constitutional provisions of the Fourth Amendment.  The "more-specific-provision rule" provides that Plaintiff's substantive due process claim is more appropriately evaluated through that rubric.  Accordingly, to the extent that Plaintiff attempts to proceed under this theory, the Court will dismiss that aspect of Count One with prejudice.

The Court now addresses Plaintiff's procedural due process claim. To state a § 1983 claim for deprivation of procedural due process, Plaintiffs must allege that: (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

In the case at bar, Plaintiff fails to plead how the procedures available did not afford him due process of law, and he offers little more than labeling the alleged actions of Madey as a deprivation of his rights. Absent some modicum of factual detail to support a showing that he has a plausible claim for relief as pleaded, Plaintiff's single conclusory averment alleging a deprivation is not entitled to the assumption of truth, and the Court is compelled to dismiss with prejudice Plaintiff's claim of a procedural due process violation.

The Court will not permit Plaintiff to proceed under this theory should he file an Amended Complaint to cure other deficiencies because it would be futile. Simply stated, the rationale of *Albright v. Oliver* and *Graham v. Connor* also appears to hold true where a plaintiff endeavors to obtain relief for false arrest under the procedural component of the Due Process Clause.[1] *See Moyer v. Borough of N. Wales*, CIV. A. 00-CV-1092, 2000 WL 1665132, *3 (E.D. Pa. Nov. 7, 2000) ("Similarly, the procedural due process prong of the Fourteenth Amendment does not support a cause of action for false arrest.") (citing *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000)); *see also Gorman v. Warwick Twp.*, 10-CV-6760, 2011 WL 1235198, at *4 (E.D. Pa. Apr. 1, 2011) (collecting cases). Therefore, the Court will also dismiss this component of Plaintiff's case with prejudice.

---

1. The Court acknowledges that "the procedural due process clause may ground a cause of action for malicious prosecution." *Moyer v. Borough of N. Wales*, CIV. A. 00-CV-1092, 2000 WL 1665132, *3 (E.D. Pa. Nov. 7, 2000) (citation omitted). However, as discussed in greater detail below, the Court will dismiss Plaintiff's malicious prosecution claim.

3.  Retaliatory Arrest Claim

Plaintiff's remaining theory is found in a single averment in Count One in which he pleads that Madey "harassed and arrested Plaintiff in retaliation for [his] threats to expose Defendant Vasko Dodge's poor consumer relations policies and their refusal to honor contractual obligations in regard to new vehicle warranties."  (Doc. 1 at 11).   Although this fleeting reference is labeled under the heading of "Violation of Constitutional Rights: Fourth and Fourteenth Amendment," the Court reads it as asserting a First Amendment retaliation claim and assumes that the references to the Fourteenth Amendment is simply an acknowledgment that the freedoms protected by the First Amendment are similarly secured against abridgment by the States through the Fourteenth Amendment.

To establish a First Amendment retaliation claim predicated on 42 U.S.C. § 1983, a plaintiff must prove the following elements: (1) that he engaged in a protected activity; (2) that the Defendant responded with retaliation; and (3) that the protected activity was the cause of the retaliation.  *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).   There is also a fourth element required to state a First Amendment retaliation claim premised on an investigation that leads to a decision to prosecute: the absence of probable cause for the prosecution.  *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir. 2010).

Here, Plaintiff's cursory legal conclusions dressed up as factual allegations simply do not comport with the federal standards to state a plausible claim for relief.  Among the facial deficiencies is Plaintiff's failure and possible inability to produce any factual grounds to show a causal connection between any protected activity that he potentially engaged in and the arrest. Simply put, there are no averments to support a finding that the Vaskos ever told Madey any of the communications from Plaintiff to Vasko or that Madey otherwise knew or learned of any

protected activity, assuming that any such activity occurred.  This form of "pleading" a claim offends the principles laid out in *Twombly* and *Iqbal*.  Therefore, the Court will dismiss this aspect of Count One with prejudice as Plaintiff fails to state a cognizable claim at this time and will grant Madey qualified immunity with regard to this theory, which is discussed in greater detail below.

### 4.  Qualified Immunity Challenge

Plaintiff also challenges Madey's contention that he is entitled to the protections afforded by qualified immunity.  Madey appears to assert qualified immunity only with regard to the alleged false arrest and the retaliatory arrest claims, which are the only two claims among the other four counts of the Complaint in which he is specifically named as a defendant in his individual capacity only.

The doctrine of qualified immunity protects "government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *James*, 11-3345, 2012 WL 5954632, at *2 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In *Saucier v. Katz*, the Supreme Court established a two-step sequence that governs whether government officials are entitled to such protection.  553 U.S. 194 (1982).  First, a court must ask "whether the facts that a plaintiff has alleged (*see* Fed. R. Civ. P. 12(b)(6), (c)) or shown (*see* Rules 50, 56) make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted).  Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.  *Id.*  The sequence in which a court addresses the two steps of this analysis is no longer mandatory, and courts may address the two prongs in any order, at their discretion.  *See id.* at 235-36.  If the

plaintiff does not satisfy either prong of the test, the court must enter judgment in favor of defendant as a matter of law.  *Id.* at 232.

While courts should resolve questions of qualified immunity at the earliest possible stage of litigation, it "'will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'"  *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *C.f. Newland v. Reehorst*, 328 Fed. App'x. 788, 791 n.3 (3d Cir. 2009) ("We caution, however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.").  If the complaint fails to state a claim of a violation of clearly established law on its face, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Thomas*, 463 F.3d at 291 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, the immunity of Officer Madey is not established on the face of the Complaint with regard to the false arrest claim.  This does not result from step two of the *Saucier* analysis (*i.e.*, that it is clearly established that an arrest without probable cause is unlawful), but rather from the Court's inability at this time to answer the first question of the *Saucier* analysis, which "is whether a constitutional violation occurred."  *James*, 11-3345, 2012 WL 5954632, at *2.

That is, at step one, the Court must decide "whether there is any wrong to address," an inquiry that requires a determination on whether Plaintiff satisfied the pleading requirement to set forth specific facts establishing a prima facie case for false arrest: "(1) that there was an arrest; and (2) that the officer made the arrest without probable cause."  *James*, 11-3345, 2012 WL 5954632, at *2.  Neither party disputes that an arrest did indeed occur, but they understandably disagree on whether Madey executed a seizure absent probable cause.  This

determination is typically one left for the factfinder to decide in a § 1983 suit, as previously discussed.  Moreover, this case also does not present a situation where the Court should decide that probable cause existed as a matter of law when the evidence is viewed in the light most favorable to the plaintiff.  Accordingly, at this early stage of the litigation, qualified immunity is not established on the face of the Complaint with regard to the claim of false arrest against Madey.

The Court does, however, find that Madey is entitled to qualified immunity on the retaliatory arrest theory, although on a different basis than he asserts.  That is, while Madey focuses on the "clearly established" prong of the *Saucier* analysis, the Court finds that the facts as pleaded do not make out a violation of a constitutional right.  Although discussed in greater detail above, the Court reiterates that Plaintiff fails to plead any factual basis to show a causal connection between any protected activity that he possibly engaged in and the arrest. Most importantly, such a causal connection is an element of the cause of action asserted.  Thus, as pleaded, there is no "wrong to address" as Plaintiff does not set forth specific facts to establish a prima facie case for retaliatory arrest.

B.  <u>Punitive Damage Claim Against Madey</u>

At Count Two, Plaintiff includes a virtually identical cause of action as Count One, but limits the claim to Madey in his individual capacity only and notes that the claim is solely for punitive damages.  Defendant challenges the underlying merits of whether the conduct as pleaded rises to the level of a willful and wanton character.

As an initial matter, the Court reads this count as simply stating an independent claim for punitive damages and notes that pleading this remedy as a separate count from the actual underlying cause of action at Count One is not appropriate.  *See generally Dittrich v. Seeds*, No.

03–cv–6128, 2005 WL 2436648, at *2 (E.D. Pa. Sept.28, 2005) ("[P]unitive damages are not an independent cause of action. Rather, punitive damages are a remedy.") (citation omitted). Claims for punitive damages are appropriately placed in an *ad damnum* clause. The Court directs Plaintiff to cure this pleading deficit should he file an Amended Complaint.

Although Defendants request dismissal of this count on the basis that the conduct alleged does not amount to reckless indifference or callous disregard of Plaintiff's rights, the Court finds that it would be premature at this stage of the proceeding to determine whether punitive damages are warranted. This practice is not uncommon among district courts in the Third Circuit. *See, e.g.*, *Royster v. Beard*, CIV.A. 09-1150, 2012 WL 1564630, at *5 (W.D. Pa. Feb. 28, 2012) *report and recommendation adopted*, CIV.A. 09-1150, 2012 WL 1578096, at *1 (W.D. Pa. May 3, 2012); *Stilton v. E. Jersey State Prison*, CIV.A.07-3702JAG, 2009 WL 3231219, at *8 (D. N.J. Sept. 29, 2009) ("At the motion to dismiss stage, where discovery has not occurred, it is premature to determine whether Plaintiff has demonstrated the requisite intent and motive on the part of Defendants to support his punitive damages claim."). Accordingly, the Court will not address the merits of Defendants' challenge at this time and will not grant the motion to dismiss on that basis.

C.  Failure to Train and Supervise Claims Against Peters Township, Yanchak & Fruecht

At Count Three, Plaintiff raises a *Monell* claim against Peter Township, alleging that it was the policy and practice of the Township to authorize certain officers to "cover-up the misuse of the power to arrest," to "authorize and encourage police officers to obtain false statements and file criminal complaints with insufficient probable cause" and to "file such criminal complaints in order to harass and retaliate against certain citizens, specifically those who exercised their free speech." (Doc. No. 1 at 12-13). Plaintiff also avers failure to train and failure to supervise

claims against Captain Yanchak and Chief Fruecht based on their alleged encouragement, toleration, and enforcement of those policies and practices.

In response, Defendants first seek to have this Court dismiss the official capacity claims against Yanchak and Fruecht because that aspect of the suit is redundant of suing Peters Township.  Defendants further request that to the extent Plaintiff sues Yanchak and Fruecht in their individual capacities, their lack of personal involvement in the arrest and their entitlement to qualified immunity merits dismissal.  According to Defendants, dismissal of the *Monnell* claim is also warranted because Plaintiff failed to plead any factual basis to support his theories, probable cause supported the arrest, and no protected speech occurred.

1. Official Capacity Suit Against Yanchak and Fruecht

A suit under § 1983 against a municipal officer in his official capacity is in actuality a suit directed against the municipality that the officer represents.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  An official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent.  *Id.*  Such a suit is properly treated as a suit against the entity.  *Id.* at 166.  Therefore, to the extent that Plaintiff brought suit against Yanchak and Fruecht for failure to train and failure to supervise, the Court will dismiss those claims with prejudice insofar as the municipality is a named Defendant.

2. Personal Capacity Suit Against Yanchak and Fruecht

A personal-capacity suit seeks to impose personal liability upon a government official for action(s) he/she takes under color of state law. *See id.* at 165-66 (1985).  "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *See id.* at 166 (emphasis in original omitted).  Depending on the position of a defendant, he/she may have various defenses to

liability otherwise unavailable in an official-capacity action, such as absolute or qualified immunity.  *See id.* at 167 (citations omitted).

Defendants highlight their lack of personal involvement in the investigation and/or arrest as their principal, if not sole, ground to support their argument that the Court should afford them qualified immunity.  The Court agrees.

Generally, in order to establish supervisory liability against government officials in their individual capacities under § 1983, a plaintiff must demonstrate that the officials were personally involved in the commission of the conduct alleged.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Id.*  However, the United States Supreme Court has recognized a second theory of supervisory liability in that "there are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  In such cases, our court of appeals appears to have endorsed the need for a plaintiff to likewise demonstrate that a government official was personally involved.  *See Bangura v. City of Philadelphia*, 338 F. App'x 261, 265 (3d Cir. 2009) ("In order to state a claim against Commissioner Johnson under § 1983, Bangura was required to allege facts demonstrating that the Commissioner had personal involvement in the allegedly deficient training.") (citing *Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.")); *see generally Adams v. Springmeyer*, CIV.A. 11-790, 2012 WL 1865736, at *9 (W.D. Pa. May 22, 2012) ("Following *Iqbal*, the 'viability and scope of supervisory liability' is unclear.") (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.8 (3d Cir. 2010)).

Here, Plaintiff's Complaint is devoid of any cognizable facts to support a showing that Yanchak and Fruecht were personally involved in any recognizable Constitutional violation remaining after the Court will have ruled on the pending motions.  Despites Plaintiff's efforts to aver that they encouraged and tolerated the alleged practices, had direct knowledge that Madey engaged in illegal procedures, and personally directed him to Plaintiff, the Court reads those averments as a hollow attempt to couch illusory legal conclusions as facts to support some viable supervisory claim.  The Court also does not deem Plaintiff's rote recital that "Defendant Chief of Police Fruecht refused to adequately train, direct, supervise, or control Defendant Officer Meday so as to prevent the violation of Plaintiff's constitutional rights," as sufficient pleading under *Twombly* and *Iqbal* to show that either Defendant Yanchak or Defendant Fruecht was personally involved in carrying out any training procedure such that they could plausibly be held liable under that theory.  (Doc. No. 1 at 13).  Put differently, these allegations do not make out a violation of a constitutional right.  Therefore, Yanchak and Fruecht will be granted qualified immunity as to this claim, and Plaintiff will not be granted leave to amend this particular claim as these Defendants are entitled to qualified immunity from this suit.

     3.   *Monell* Claim Against Peters Township

A governing body may be liable under § 1983 if the governmental body itself "'subjects" a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Monell v. New York Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  But, a local government or municipality is only responsible "for their *own* illegal acts; [t]hey are not vicariously liable under § 1983 for their employees' actions."  *Id.* (citations omitted and emphasis in original).

Plaintiffs who seek to pursue a *Monell* claim must prove that that the "'action pursuant to official municipal policy' caused the injury." *Connick*, 131 S. Ct. at 1359 (quoting *Monell*, 436 U.S. at 694 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Where the policy in question concerns a failure to train or supervise municipal actors, "liability under § 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Harris*, 489 U.S. at 388). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359 (citation omitted).

For a failure to train claim to amount to deliberate indifference, "it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 191 F.3d 339, 357 (3d Cir. 1999) (citation omitted); *see also Book v. Merski*, C.A. 08-83 ERIE, 2009 WL 890469, at *7 (W.D. Pa. Mar. 31, 2009) ("[T]he pleading requirements are essentially the same for failure to train and failure to supervise claims . . . ."). As the Supreme Court recently explained, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (citation omitted).

The Court finds Plaintiff has stated a viable claim that the municipality violated his Fourth Amendment rights to be free from arrests unsupported by probable cause. Plaintiff has alleged several ongoing alleged policies and practices of Peters Township which may qualify as

Constitutional violations when and if found to be true.  Although Defendant attempts to rebut each of the theories that Plaintiff relies upon to support his *Monell* claim, they again assume the existence of probable cause in their effort to rebut the purported Township policy of making arrests without probable cause.  Thus, the Court will deny dismissal of the *Monell* count in the Complaint against Peters Township at this time.

D. <u>Conspiracy Claim Against All Named Defendants</u>

Although Plaintiff only references Madey, Yanchak and Fruecht as Defendants under the heading of Count Four, he includes the Vasko Defendants as co-conspirators within multiple averments.  The Vasko Defendants claim that they cannot be liable under § 1983 because they do not qualify as state actors under any recognized theory, or alternatively, because Plaintiff fails to sufficiently plead that a conspiracy existed.  The Township Defendants incorporate the latter argument by reference.  The Court can only reach the second argument at this time.

To succeed on a civil conspiracy under § 1983, a plaintiff must show: "(1) the existence of a conspiracy; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  *Victory Outreach Ctr. v. Melso*, 371 F.Supp.2d 642, 647 (E.D. Pa. 2004). Such a conspiracy "must be made up of two or more state actors, or at least one state actor with a private party deemed to be a state actor.  *Pugh v. Downs*, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)); *C.f. Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) ("[A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983.").

To overcome a motion to dismiss when a civil conspiracy claim is alleged, a plaintiff is required to "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  *Cunningham v. N. Versailles Twp.*, CIV.A. 09-1314, 2010 WL

391380, at *5 (W.D. Pa. Jan. 27, 2010) (citing *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)).  "While a heightened pleading standard generally does not apply to civil rights actions against individual defendants and municipalities, a complaint that alleges a conspiracy must be pled with particularity." *Id.* (citations omitted).

Plaintiff fails to meet the particularity standard in his Complaint.  The only recognizable claim of an agreement is the bold and conclusory statement that "[t]hese Defendants jointly agreed to have Plaintiff arrested in order to harass, threaten and intimidate, and retaliate against Plaintiff for exercising his free speech rights." (Doc. No. 1 at 14).  The bald recital of a required conspiracy element does not make it so.  Plaintiff has set forth no factual support of an agreement between any Vasko Defendant and any Township Defendant.  Indeed, the only interaction among the parties aside from the unadorned label that an agreement existed is Officer Madey conducted an arrest after John Vasko told him that Vasko Dodge had a voicemail tape recording from the previous day in which Plaintiff "stated that he was going to drive his vehicle through the front show room window." (Doc. No. 1 at 5).  Thus, the Court will dismiss Count IV as to all named Defendants with leave to amend except as to the Court's previous determination regarding entitlement to qualified immunity.

   E.  <u>Intentional Infliction of Emotional Distress Claim Against Madey, Yanchak, Fruecht, John Vasko & William Vasko</u>

Plaintiff also includes pendent state law claims in his complaint, the first of which is a claim for Intentional Infliction of Emotional Distress ("IIED") at Count Five.  According to Plaintiff, Madey's filing of criminal charges based on "false information provided by Defendants John and William Vasko in order to stifle [his] free speech" constituted an attempt to "humiliate Plaintiff within his community, destroy his reputation and cause him emotional distress." (Doc.

No. 1 at 15). Plaintiff avers that he "now suffers from a depression, stress and anxiety as a result of the mental and emotional stress he suffered." *Id.*

The Vasko Defendants respond by contending that the Complaint contains no allegations that amount to extreme and/or outrageous conduct to support a viable claim. The Township Defendants again incorporate by reference the arguments advanced by their co-defendants.

At this stage of the litigation, district courts have observed "[a]n intentional infliction of emotional distress claim is rarely disposed of on a motion to dismiss." *Brandt v. Anheuser-Busch, Inc.*, CIV 06-5424 WJM, 2007 WL 1175751, at *5 (D. N.J. Apr. 19, 2007) (citing *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 349 (D. N.J. 2006)); *see e.g.*, *Gibbs v. Massey*, CIV.A.07-3604(PGS), 2009 WL 838138, at *9 (D. N.J. Mar. 26, 2009) ("While this Court may be skeptical that plaintiff can fulfill the elements, or that she cannot show the requisite damages, plaintiff's allegations of the false accusations and the reporting of them to the police is enough to withstand a motion to dismiss at this time."); *Gupta v. Sears, Roebuck & Co.*, CIV.A. 07-243, 2007 WL 3256882, at *1 (W.D. Pa. Nov. 2, 2007). Construing the allegations in the Complaint liberally at this stage as required, the Court concludes that Plaintiff has alleged sufficient facts to survive the motion to dismiss as to Madey, John Vasko, and William Vasko. The Court will dismiss with prejudice the claim as to Yanchak and Fruecht due to qualified immunity.

F. <u>Malicious Prosecution Claim Against Madey</u>

Plaintiff also filed a malicious prosecution claim against Madey at Count Six. Defendant Madey correctly highlights that such a cause of action is premature.

To prevail on a Fourth Amendment malicious prosecution claim under Section 1983, a plaintiff is required to establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (citation omitted).  The first four elements are the same under Pennsylvania law.  *Id.* at n.2 (citation omitted).  A claim for malicious prosecution accrues on the date that the proceedings terminated favorably to the accused, and "[a]s such, 'the statute of limitations for malicious prosecution begins to run on the date the proceedings terminated favorably to the accused.'" *Suter v. Petrone*, 2:05CV123, 2006 WL 1453099, at *2 (W.D. Pa. Mar. 14, 2006) (quoting *Cap v. K-Mart Discount Stores, Inc.*, 515 A.2d 52, 53 (Pa. Super. Ct. 1986)).

The fatal defect in this case lies in the "favorably terminated" element.  Plaintiff cannot establish that the proceedings terminated favorably because his trial in Court of Common Pleas of Washington County at CP-63-CR-0003087-2011 has not yet taken place.  Thus, any claim for malicious prosecution to which Plaintiff may ultimately be entitled to pursue has not yet accrued.

The Court will not grant leave to amend this count as it would be futile at this time.  However, Count VI is dismissed without prejudice, and Plaintiff may later pursue this claim should it ever become ripe.

G. <u>Defamation Claim Against Madey, John Vasko & William Vasko</u>

Plaintiff's final cause of action is labeled as defamation, but pleaded as a claim for defamation and "false light," which are two distinct torts.  In support of his claim, Plaintiff avers that Madey, John Vasko, and William Vasko maliciously publicized slanderous and libelous statements to the media, including that Plaintiff had deliberately and intentionally driven his vehicle into the Vasko Dodge building and that he had committed criminal acts.  Plaintiff

contends that such statements harmed his reputation in the community and resulted in the loss of employment.

The Vasko Defendants dispute that dismissal is appropriate because there are not any allegations that John Vasko or William Vasko themselves ever publicized any statements with regard to the incident or that they ever provided any statement about Plaintiff that was not true. Madey sets forth a similar position.

In a defamation case, the plaintiff must prove: (i) the defamatory character of the communication; (ii) its publication by the defendant; (iii) its application to the plaintiff; (iv) the understanding by the recipient of its defamatory meaning; (v) the understanding by the recipient of it as intended to be applied to the plaintiff; (vi) special harm resulting to the plaintiff from its publication; and (vii) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a); *Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 71 (Pa. Super. Ct. 2005). When the issue is properly raised, the defendant has the burden of proving: "(1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; [and/or] (3) the character of the subject matter of defamatory comment as of public concern." 42 Pa. Cons. Stat. Ann. § 8343(b); *Weber*, 878 A.2d at 71-72. "It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Tucker v. Phila. Daily News*, 848 A.2d 113, 123-24 (Pa. 2004) (quoting *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215-16 (Pa. 1981)).

Under the false light rubric for an invasion of privacy claim, the standards are different. In *Curran v. Children's Service Center of Wyoming County, Inc.*, the Court stated:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of

his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

578 A.2d 8, 12 (Pa. Super. Ct. 1990).  The term "publicity" as an element of the tort of invasion of privacy, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Id.* (citing RESTATEMENT (SECOND) OF TORTS, § 652D, cmt. A). Pennsylvania courts have also recognized that a false light claim is proper, even if the information released is true but tends to imply falsehoods.  *Morgenstern v. Fox Television Stations of Philadelphia*, CIV.A. 08-0562, 2008 WL 4792503, at *10 (E.D. Pa. Oct. 31, 2008) (citation omitted).

Accepting the veracity of the factual allegations of the Complaint as this Court must at this stage of the proceeding, Plaintiff has made enough of a showing to move forward.  The allegations set forth in the Complaint sufficiently establish that the statements purportedly made by Defendants were, among other things, seemingly untrue, published to the media, harmed his reputation, and caused him to lose his job.  Because the Court must take Plaintiff's account, it cannot give any weight to Defendants' arguments regarding the truth of the pleaded defamatory communication given the parties' diametrically opposed versions of the facts.  Thus, the Court will not dismiss Count Seven of the Complaint at this time.

<u>Conclusion</u>

Based on the foregoing reasons, the motions to dismiss will be granted in part and denied in part.  The Court will grant Plaintiff leave to amend his Complaint other than as noted above, *i.e.*, when a claim has been dismissed with prejudice.

To briefly summarize the conclusions recited above, the Court notes the following: (1)

27

Count I: (a) the § 1983 claim for false arrest against Madey may proceed as pled, (b) the substantive and procedural due process claims against Madey are dismissed with prejudice; and (c) the retaliatory arrest claim against Madey is dismissed with prejudice due to qualified immunity; (2) Count II: dismissed without prejudice with leave to amend so that Plaintiff may properly plead punitive damages; (3) Count III: (a) the *Monnell* claim against Peters Township may proceed as pled; (b) the failure to train and failure to supervise claims against Yanchak and Fruecht in their official capacity are dismissed with prejudice; and (c) the failure to train and failure to supervise claims against Yanchak and Fruecht in their personal capacity are dismissed with prejudice due to qualified immunity; (4) Count IV: (a) the conspiracy claim against Madey, John Vasko, and William Vasko is dismissed without prejudice with leave to amend; and (b) the conspiracy claim against Yanchak and Fruecht is dismissed with prejudice due to qualified immunity; (5) Count V: (a) the Intentional Infliction of Emotional Distress claim against Madey, John Vasko, and William Vasko may proceed as pled; and (b) the Intentional Infliction of Emotional Distress claim against Yanchak and Fruecht is dismissed with prejudice; (6) Count IV: the malicious prosecution claim against Madey is dismissed without prejudice, but without leave to amend at this time; and (7) Count VII: the defamation claim against Madey, John Vasko, and William Vasko may proceed as pled.

If Plaintiff chooses to file an Amended Complaint, it will be important to address the shortcomings previously discussed to assure that it contains sufficient factual allegations to render the claim "plausible" in compliance with the pleading standard set forth and explained in *Twombly* and *Iqbal*.  Should Plaintiff fail to heed this instruction, dismissal of certain claims with prejudice may follow.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT E. SNATCHKO, JR.,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **2:12-cv-1179** |
| | ) |
| **PETERS TOWNSHIP, OFFICER MARK E.** | ) |
| **MADEY, CAPTAIN MICHAEL YANCHAK,** | ) |
| **CHIEF HARRY FRUECHT**, **STEVE VASKO,** | ) |
| **INC.** *trading and doing business as* | ) |
| VASKO DODGE **WILLIAM VASKO** | ) |
| *and* **JOHN VASKO,** | ) |
| **Defendants.** | |

**ORDER OF COURT**

AND NOW, this 28th day of December, 2012, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that

> (1) the FIRST MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. No. 11), filed by Defendants Steve Vasko Inc., t/d/b/a Vasko Dodge, William Vasko and John Vasko (the "Vasko Defendants"), as more fully set forth in the foregoing Memorandum Opinion, is **GRANTED IN PART AND DENIED IN PART**; and

> (2) and the MOTION TO DISMISS COMPLAINT (Doc. No. 16) filed by Peters Township, Officer Mark E. Madey, Captain Michael Yanchak, and Chief Harry Fruecht"), as more fully set forth in the foregoing Memorandum Opinion, is **GRANTED IN PART AND DENIED IN PART**.

Except as otherwise noted above, Plaintiff is granted leave to amend his Complaint on or before

January 11, 2013 if he so chooses.

The caption of this action is amended to hereafter read as follows:

| | |
|---|---|
| **ROBERT E. SNATCHKO, JR.,** )<br>**Plaintiff,** )<br> )<br>**vs.** )<br> )<br>**PETERS TOWNSHIP, OFFICER MARK E.** )<br>**MADEY, STEVE VASKO, INC.** *trading and doing* )<br>*business as* VASKO DODGE, **WILLIAM VASKO** )<br>*and* **JOHN VASKO,** )<br>**Defendants.** )<br> ) | **2:12-cv-1179** |

cc:   Robert M. Owsiany
       Email: rmowsiany@rmolaw.com

       Paul D. Krepps
       Email: pdkrepps@mdwcg.com

       Estelle K. McGrath
       Email: ekmcgrath@mdwcg.com

       Teresa O. Sirianni
       Email: tosirianni@mdwcg.com

       Frank J. Lavery , Jr.
       Email: flavery@laverylaw.com

       Gary H. Dadamo
       Email: gdadamo@laverylaw.com